IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN C. KEITH,**         ) | |
|         **Plaintiff**         ) | **C.A.No. 1:18-cv-110** |
|                                      ) | |
| **vs.**                               ) | |
|                                      ) | **Re: Motion for Summary Judgment** |
| **CHARTER COMMUNICATIONS, INC.,** ) | **ECF No. 43** |
|         **Defendant.**         ) | |

**MEMORANDUM OPINION**

District Judge Susan Paradise Baxter

This is an employment discrimination action brought by Plaintiff John C. Keith against his former employer, Charter Communications, Inc. ("Charter"). The present lawsuit arises out of the loss of Mr. Keith's employment with Charter. Mr. Keith alleges that the termination of his employment violates the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq*. Mr. Keith claims that Charter violated the ADA when they failed to provide reasonable accommodations, failed to engage in the interactive process, and terminated his employment due to his disability.

**I.    Relevant Procedural History**

Mr. Keith initiated this litigation by filing a Complaint on April 10, 2018. ECF No. 1. Following a period of discovery, Charter has moved for summary judgment. ECF No. 43. Mr. Keith opposes the motion. ECF Nos. 52-54. The motion is fully briefed and is now ready for disposition.

**II.    Standard of Review**

    A.    Summary Judgment Standard

1

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e); *Williams v. Borough of W. Chester, Pa*., 891 F.2d 458, 460-461 (3d Cir. 1989). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. *Celotex*, 477 U.S. at 322. When considering a motion for summary judgment, the court cannot weigh the evidence or to make credibility determinations but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986).

B.    Concise Statement Requirement under the Local Rules

Charter filed a Concise Statement of Material Facts with its motion for summary

2

judgment and Mr. Keith filed a Response thereto, as required by this Court's Local Rules of Civil Procedure.[1] Mr. Keith's responses, however, fail to comport with the requirements of these Rules. *See* W.D.Pa. LCvR 56(C)(1).[2]

As the party opposing summary judgment, Mr. Keith is responsible to state the specific objections he has to a moving party's statement of undisputed facts. Local Rule 56(C) mandates that an opposing party's response to the motion for summary judgment **admit or deny** each numbered paragraph in the moving party's Concise Statement of Material Facts while setting forth a basis for the same, with appropriate reference to the evidentiary record. LCvR. 56(C)(1). *See also* Fed.R.Civ.P. 56(c)(1) (providing that a party asserting that a fact … is genuinely disputed must support the assertion by: citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations,

---

[1] "These rules do not exist only as mere formalities; they serve an important purpose for the Court. Concise statements of material fact isolate the disputed facts and assure the parties have produced materials in the record to support their underlying claims. A party cannot oppose a motion for summary judgment on mere denials of material facts. Fed.R.Civ.P. 56(c). Failure to comply with the rules has 'consequences, as '[a]lleged material facts set forth in the moving party's Concise Statement of Material Facts … will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party.'" *Cuppett v. Rite Aid of Pennsylvania, Inc.*, 2019 WL 5310578, at *1 n.1 (W.D. Pa. 2019) *citing* LCvR 56(E).

[2] This Rule requires the party opposing summary judgment to file "[a] separately filed concise statement, which responds to each numbered paragraph in the moving party's Concise Statement of Material Facts by: a. admitting or denying whether each fact contained in the moving party's Concise Statement of Material Facts is undisputed and/or material; b. setting forth the basis for the denial if any fact contained in the moving party's Concise Statement of Material Facts is not admitted in its entirety (as to whether it is undisputed or material), with appropriate reference to the record (*See* LCvR 56.B.1 for instructions regarding format and annotation); and c. setting forth in separately numbered paragraphs any other material facts that are allegedly at issue, and/or that the opposing party asserts are necessary for the Court to determine the motion for summary judgment." LCvR 56(C)(1). *See also Marinkovic v. Battaglia*, 2019 WL 4600207, at *2 (W.D. Pa. Sept. 23, 2019).

stipulations (including those made for purposed of the motion only), admissions, interrogatory answers, or other materials …). Mr. Keith has not done this.[3]

If facts are not properly opposed, the Rules allow that they may be deemed admitted. *See* Fed.R.Civ.P. 56(e) ("If a party fails … to properly address another party's assertion of fact as required by Rule 56(c), the court may: … Grant summary judgment if the motion and supporting materials -- including the facts considered undisputed – show that the movant is entitled to it."); Local Rule 56(E) ("Alleged material facts set forth in the moving party's Concise Statement of Material Facts or in the opposing party's Responsive Concise Statement, which are claimed to be undisputed, will for the purposes of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party."). *See also Pondexter v. Allegheny County Housing Authority*, 2012 WL 3611225 (W.D. Pa. 2012).

Accordingly, the Court, where noted, will deem the improperly responded-to facts in Charter's Concise Statement as admitted. On such a record, we proceed.

### III. Factual Background

Because Mr. Keith's claims are precluded by judicial estoppel, only a partial recitation of facts is necessary here. Plaintiff argues that there are genuine issues of material fact as to whether Plaintiff was totally disabled and unable to walk. While there may be disputed factual issues as to whether Plaintiff was totally disabled or unable to walk, those issues are not material to the application of judicial estoppel. *See Liberty Lobby*, 477 U.S. at 248 (a fact is only

---

[3] By way of example, Charter sets forth four Statements of Fact that Mr. Keith answers with "Malinowski Declaration, Exhibit [B or C] is filed under seal." *See* ECF No. 53, ¶ ¶ 41-44.

"material" if it "might affect the outcome of the suit under the governing law."). Here, the focus must be on a comparison of Plaintiff's statements before the SSA (without regard to their truth or falsity) and Plaintiff's statements in this lawsuit.

Mr. Keith was an Account Executive employed by Charter Communications from 2003 to 2006 and Keith was rehired in August 2012 in the same capacity. ECF No. 53, ¶ 6. While the precise details regarding the termination of the employment relationship are somewhat unclear, the parties agree that Mr. Keith stopped working for Charter as an Account Executive in June of 2016. *Id.* at ¶ ¶ 59-60.

The Account Executive position is a field sales position responsible for "achieving a monthly revenue quota in data phone and video sales." *Id.* at ¶ 10. Account Executives are responsible for "sales within [their] defined sales territory." *Id.* at ¶ 11. Among their obligations, Account Executives must identify new sales opportunities for existing and potential customers by "contacting prospective clients by telephone, cold call premise visits, networking and industry events," and personally meeting with those customers outside the office to complete sales. *Id.* at ¶ 12. Account Executives are required to routinely travel inside their sales territory, approximately a 50-mile radius, and occasionally attend non-sales events such as work meetings outside the sales territory. *Id.* at ¶ 13. An Account Executive must have a valid driver's license and a clean driving record. ECF No. 46-9. The position requires frequent use of a telephone, computer, and keyboard. *Id.* Frequent physical demands include reading, seeing, sitting, speaking, standing, walking, driving, typing, and using hands repetitively. *Id.*

Account Executives are additionally expected to bring in a certain amount of revenue. ECF No. 57-7, Declaration of Brian Malinowski[4], page 2. Charter maintains a Sales Performance Management Plan ("SPMP") to ensure that sales employees meet sales targets. The SPMP also provides for corrective action when employees fail to meet those goals. *Id.* at page 3. It is not disputed that between 2012 and 2016, Mr. Keith met his full monthly sales quota just twice. *Id.* at ¶ 31.

On April 22, 2016, Plaintiff was given an initial Written Warning under the SPMP. *Id.* at ¶ 49. That same day, Mr. Keith contacted Human Resources to request accommodation-related paperwork[5]. *Id.* at ¶ 72. Mr. Keith discussed the paperwork and the accommodation process with Mr. Malinowski by phone. *Id.* at ¶ 73. When Mr. Keith mentioned his difficulty with typing, Mr. Malinowski suggested possible accommodation by way of voice recognition software. *Id.* at ¶ 74. On May 4, 2016, Mr. Keith submitted the paperwork requesting accommodation to Human Resources. *Id.* at ¶ 75.[6]

---

[4] Mr. Malinowski has been a Human Resources Business Partner Manager at Charter since February 2019 but has served for several years in other positions in Charter's HR department. ECF No. 57-7, page 2.

[5] The parties disagree as to whether this was the first time Mr. Keith requested any accommodation.

[6] His submission included an ADA Physician Certification by Dr. Michele Tomczak. ECF No. 57-5. In a Declaration prepared for this litigation and dated more than three years after the ADA Certification, Dr. Tomczak admitted that her ADA Certification "contains a few inaccuracies regarding John C. Keith's permanent limitations." ECF No. 57-5. Defendant urges this Court to disregard the Tomczak Declaration as a sham. See, e.g., *Jiminez v. All Am. Rathskeller, Inc.,* 503 F.3d 247, 251 (3d Cir. 2007) (the sham affidavit doctrine holds: "a party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony."). Because this appears to be a case where the sham affidavit doctrine applies, Keith cannot rely on anything Dr. Tomczak stated in the later revision to support his claims.

Mr. Keith first applied for Social Security Disability Income ("SSDI") on April 10, 2016. ECF No. 53, ¶ 63.  His application, as contained in the record, is problematic to the advancement of his case. Keith would like this Court to disregard what he said in applying for SSDI benefits because it may negate the basis for his underlying claims; in effect, his approach is that there is "nothing to see here."  *See, e.g., Exelon Corporation v. Federal Energy Regulatory Comm'n*, 911 F.3d 1236, 1242 (D.D.C. 2018). This Court disagrees.

As the basis for his initial application, Keith stated he suffered from the following medical conditions: a birth injury which "affects walking"; back injury which affects "walking gait"; an arthritic left knee which "affects balance and stair climbing"; and severe plantar fasciitis which affects "standing/walking." *Id*.  Mr. Keith further recounted that his "right foot and right hand distinctly impact [his] ability to walk without pain and to keyboard with 2 hands – which are essential in [his] job"; and that he was "much slower in the performance of [his] duties – and in sales, that means production" and that he had "become much slower than [his] counterparts." *Id*. at ¶ ¶ 64-66.

Mr. Keith further acknowledged that he could not "perform these tasks now [i.e., walking, typing, and lifting] because of the physical issues – or perform most jobs found in the workplace." *Id*. at ¶ 67. By letter dated May 16, 2016, the Social Security Administration (SSA) denied his application without considering his medical conditions because he was employed fulltime by Charter. *Id*. at ¶ 68.

Mr. Keith filed a renewed application for SSDI in December 2016. *See* ECF No. 46-5, pages 1-28. The documents supporting this second application include a function report and a work history report dated January 12, 2017. ECF No. 59, at ¶ 109.  In the function report, Mr. Keith reported the following limitations on his ability to perform work: "I cannot walk very far.

7

When walking I have substantial pain and an uneven gait. I am unable to walk on rough or uneven surfaces at all … I cannot perform the necessary walking and standing required for my past work doing outside sales." *Id.* at ¶ 114.  Mr. Keith indicated that he could not walk or stand for any length of time and could only drive short distances when necessary. *Id.* at ¶ ¶ 115 -116. Mr. Keith reported that his conditions affect his ability to lift, stand, walk, and climb stairs and that he could only be on his feet for a few minutes at a time. *Id.* at ¶ ¶ 117 -118.[7]

This time, the SSA awarded Keith benefits and found that his date of disability to be June 21, 2016. *Id.* at ¶ 119. The SSA notified Mr. Keith that he would be entitled to benefits beginning in December 2016, based upon his disability date of June, 2016. *Id.*  Keith continued to receive SSDI benefits until he transitioned to Social Security Income benefits in February of 2019. *Id.* at ¶ 124.

IV.     **Analysis and Discussion**

    A.  **Judicial Estoppel**

Charter argues that Keith's prior statements admitting to a total disability, including the inability to walk, defeat his ADA claims.  Judicial estoppel bars Keith from now making contrary assertions.  Keith contends that summary judgment is precluded here because a genuine issue of material fact exists, namely, whether his statements to the SSA are contrary to those asserted here.

---

[7] Mr. Keith denies the accuracy of these statements at ¶ ¶ 114-118.  In his responsive Concise Statement, Keith claims that these statements must be read together with the statutory language 'with or without an accommodation'" but provides no citation to other evidence. ECF No. 53. He further denies these statements as "mischaracterization[s] of the report" and argues they must be read in conjunction with the statutory language, "with or without an accommodation." *Id.* However, a review of the actual documents reveals that the language on the application form is the identical language recited in the Defendant's Concise Statement. *See* ECF No. 46-4, p. 32. These statements (made by Keith on his SSDI application) are deemed admitted.

The doctrine of judicial estoppel prevents litigants from gaining an advantage by asserting incompatible positions in the same proceeding or in different proceedings. *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996). "It is not intended to eliminate all inconsistencies, however slight or inadvertent; rather, it is designed to prevent litigants from playing 'fast and loose with the courts.'" *Id*. The Third Circuit has cautioned that judicial estoppel is an "extraordinary remedy" and is appropriate if: 1) the party to be estopped has taken two positions that are "irreconcilably inconsistent;" 2) that party changed his or her position in bad faith; and 3) judicial estoppel is "tailored to address the harm identified" and "no lesser sanction would adequately remedy the damage done by the litigant's misconduct." *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 779-80 (3d Cir. 2001); *see also Ryan Operations*, 81 F.3d at 356. As one Court explained:

> Judicial estoppel is an equitable doctrine that preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment.... A litigant is required to be consistent in his conduct. He may not maintain a position regarding a transaction wholly inconsistent with his previous acts in connection with that same transaction.

*In re Weinstein Co. Holdings, LLC*, 2020 WL 1320821, at *14 (D. Del. Mar. 20, 2020) (citation and quotation omitted).

There is no per se rule that a claim for disability benefits, based on an assertion of a total disability or inability to work, necessarily bars an individual from pursuing an ADA claim. *Motley v. New Jersey State Police*, 196 F.3d 160, 163 (3d Cir. 1999). "An application for Social Security Disability Insurance ("SSDI") benefits (particularly a successful one) **may** preclude a cognizable disability discrimination claim." *Lopez*, 997 F. Supp. at 273, *citing Cleveland v. Policy Management Sys. Corp.*, 526 U.S. 795 (1999)(emphasis added). Although Courts should

9

not assume that an individual's disability discrimination claim is barred "merely because prior representations or determinations of disability exist in the record," obtaining SSDI benefits can serve as evidence of an assertion that is inconsistent with the argument that a party is able to perform the essential functions of his job. *Motley,* 196 F.3d at 169. *See also Lopez*, 997 F. Supp. at 273, *citing Cleveland*, 526 U.S. at 798. A plaintiff must be given an opportunity to explain this "apparent inconsistency." *Motley*, 196 F.3d at 166.

In *Cleveland v. Policy Management Systems Corp.*, the Supreme Court laid out the estoppel framework to be used in this exact situation. The Court considered the case of a plaintiff who brought an ADA claim even though she had previously applied for and received SSDI benefits. 526 U.S. 795, 798. The Court held that the pursuit of disability benefits does not automatically estop the recipient from pursuing a later ADA claim. However, an ADA plaintiff cannot simply ignore her prior SSDI contention that she was too disabled to work. To survive a motion for summary judgment, the plaintiff must explain why his request for disability benefits is consistent with his ADA claim that he could "perform the essential functions" of his previous job, at least with "reasonable accommodation." *Id.*

The Supreme Court's decision in *Cleveland* precludes a categorical finding of judicial estoppel but compels the court to apply the doctrine only after an individualized factual inquiry. The Third Circuit further explained:

> Explanations of the sort *Cleveland* requires are, in short, contextual – they resolve the seeming discrepancy between a claim of disability and a later claim of entitlement to work not by contradicting what the plaintiff told the [benefits provider], but by demonstrating that those representations, understood in light of the unique focus and requirements of the [benefits provider] leave room for the possibility that the plaintiff is able to meet the essential demands of the job to which he claims a right under the ADA.

10

*Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 273 (3d Cir. 2012) *quoting Detz v. Greiner Indus., Inc.,* 346 F.3d 109, 118 (3d Cir. 2003). When conducting a *Cleveland* analysis, a court must ask (1) whether the positions taken by the plaintiff in his SSDI application and his discrimination claim genuinely conflict and (2) whether the plaintiff has adequately reconciled the two positions. *Detz*, 346 F.3d at 118, 120.

        1.    *The positions taken by Keith in his SSDI application and his ADA claims genuinely conflict with each other*

In his initial SSDI application, Mr. Keith stated that he did not believe that he could perform the tasks of walking, typing, or lifting due to his physical limitations and could not perform most jobs found in the workplace. ECF No. 46-4, page 25. As part of his application, Mr. Keith stated that his "right foot and right hand distinctly impact [his] ability to walk without pain and to keyboard with 2 hands – which are essential in [his] job"; and he was "much slower in the performance of [his] duties …" ECF No. 59, at ¶¶ 65-66. *See also id.* at ¶ 67.

And in Mr. Keith's second application for disability benefits in December 2016, he reported the following limitations on his ability to work: "I cannot walk very far. When walking I have substantial pain and an uneven gait. I am unable to walk on rough or uneven surfaces at all … I cannot perform the necessary walking and standing required for my past work doing outside sales." *Id*. at ¶ 114. Keith indicated that he could not walk or stand for any length of time and could only drive short distances when necessary. *Id*. at ¶¶ 115-116. Mr. Keith recounted that his conditions affect his ability to lift, stand, walk, and climb stairs and that he could only be on his feet for a few minutes at a time. *Id*. at ¶¶ 117-118. However, in his deposition testimony for this case, Mr. Keith testified that he had no permanent limitations relating to walking, lifting, or depth perception since May of 2016. ECF No. 46-1, pages 41 – 43.

Mr. Keith's statements in support of his applications for disability benefits and his deposition testimony in this case are patently inconsistent with each other. Keith maintains that his statements are not in conflict with each other because Charter has twisted one of his earlier statements: he argues that the statement that he "cannot perform the necessary walking and standing required for my past work doing outside sales" was in answer to a leading question on the Social Security application. The question on the application reads: "What were you able to do before your illnesses, injuries, or conditions that you can't do now?" Mr. Keith's answer was: "walk/stand for any length of time – trouble typing/using computer … now need frequent rests." See ECF No. 46-4, page 33. The question was not leading and the answer was not twisted.

However, even if that statement was misleading or confusing, there are earlier statements made by Mr. Keith that run counter to his sworn testimony in this case. For example, Mr. Keith's hand written statement[8] in the Remarks section of his April disability application reads "between the issues with the right and left feet, as well as the right arm and hand – I do not believe that I can perform these tasks now because of the physical issues – or perform most jobs found in the marketplace." ECF No. 46-4, page 25. There are other statements in Mr. Keith's December application which also run counter to his position here. *See* ECF No. 58, Appendix. For example, in the Work History Report attached to his December 2016 disability benefit application, Mr. Keith indicated that he only drove short distances and only when he had to. *See* ECF No. 46-4,

---

[8] Greater preclusive effect may be given to statements in which the claimant describes an injury or illness in his or her own hand. *See McGlone v. Philadelphia Gas Works, PGW,* 2017 WL 659926, at *7 (E.D. Pa. Jan. 19, 2017) *quoting Motley*, 196 F.3d at 167 ("In *Motley*, the Third Circuit drew a comparison between plaintiffs who make "a mere blanket statement of complete disability checked on a box in order to obtain pension benefits" and those who support their claim with "additional statements concerning the type and extent of [their] injuries." It is a plaintiff in the latter group that is likely to face estoppel when he asserts in an ADA case that he was in fact qualified to perform his job duties, because his assertions to the SSA would be "patently inconsistent with his present claims that he was a 'qualified individual' under the ADA.").

12

page 35. Yet in Mr. Keith's own deposition he indicated that his eyesight and confidence with driving returned in May 2016 when he recovered from his most recent eye surgery. *See* ECF No. 61-2, page 8.

### 2. *Keith has not adequately reconciled the two conflicting positions*

In reconciling the two positions, the plaintiff "must proceed from the premise that his previous assertion of an inability to work was true, or that he in good faith believed it to be true," and nonetheless demonstrate that the prior representations are "consistent with his ability to perform the essential functions of his job." *Detz*, 346 F.3d at 118, *quoting Lee v. City of Salem*, 259 F.3d 667, 674–75 (7th Cir. 2001). The court must look for "additional rationale to explain [any] apparent about-face concerning the extent of the injuries," such as "detail regarding the facts of his ... case, demonstrating how the differing statutory contexts make[ ] [his] statements made under one scheme reconcilable with [his] claims under the other." *McGlone*, 2017 WL 659926, at *6, *quoting Motley*, 196 F.3d at 165. Because of the deviations between the two statutes, there can be factual situations in which an individual is "disabled" under the SSA but "qualified" under the ADA because he is able to work with reasonable accommodation. *Id. citing Cleveland*, 526 U.S. at 803. *See also Turner v. Hershey Chocolate, U.S.,* 440 F.3d 604, 609 (3d Cir. 2006).

It is Keith's obligation to offer the explanation for the inconsistencies. In order to defeat summary judgment, his "explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless "perform the essential functions" of her job, with or without "reasonable accommodation." *Detz*, 346 F.3d at 116, *quoting Cleveland*, 526 U.S. at 807. "In other words, a plaintiff "could not simply ignore the apparent contradiction," or "create a

13

genuine issue of material fact ... simply by contradicting ... her own previous sworn statement." *Id*. Instead, a plaintiff in this position is required to offer "a sufficient explanation," as described above. *Id*.

In his opposition brief, Mr. Keith does not offer a sufficient explanation for the discrepancies between his position before the SSA and his position here. Instead, he argues that there are disputed issues of material fact as to whether he could have continued to work at Charter with reasonable accommodation. That argument does not meet the burden of explaining the inconsistencies. Accordingly, Defendant's motion for summary judgment will be granted. *See Cleveland*, 526 U.S. at 806 ("And a plaintiff's sworn assertion in an application for disability benefits that she is, for example, "unable to work" will appear to negate an essential element of her ADA case—at least if she does not offer a sufficient explanation. For that reason, we hold that an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim. Rather, she must proffer a sufficient explanation.").

## V. Conclusion

Judicial estoppel prevents a plaintiff from telling the SSA that he is disabled and unable to work but later telling this Court that his employer discriminated against him because he cannot perform his former job. *See, e.g., Branch v. Brennan,* 2019 WL 3892850, *3 (W.D. Pa. Aug. 19, 2019). That is the untenable position advanced by Mr. Keith in this litigation. The Court will grant Charter's motion for summary judgment.

An appropriate order follows.